UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Gregory Davis,

    Plaintiff,

v.                                                                     Civil Action No. 14-10443

Detroit Police and Fire Pension                      Sean F. Cox
System, *et al.*,                                               United States District Court Judge

    Defendants.
_____/

## OPINION & ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Acting *pro se*, Plaintiff Gregory Davis filed this action on January 30, 2014, asserting § 1983 and ERISA claims against his pension system and its Director. The matter is currently before the Court on Defendants' Motion for Summary Judgment, which this Court allowed Defendants to file after the deadline for filing motions, due to the neglect of Defendants' original counsel. The motion has been fully briefed by the parties and the Court held a hearing on April 28, 2016. As explained below, the Court shall GRANT Defendants' Motion for Summary Judgment because Plaintiff's claims are time-barred.

## BACKGROUND

Acting *pro se*, Plaintiff Gregory Davis ("Plaintiff" or "Davis") filed this action on January 30, 2014, asserting claims against the "Detroit Police and Fire Pension System" and Cynthia Thomas on January 30, 2014. Plaintiff's Complaint alleges that Thomas is the Director of the Pension System and "responsible for all Pension System matters." (Compl. at ¶ 3).

1

Beginning on March 7, 2014, Defendants were represented by Counsel, Lawrence Walker. Defendants' March 7, 2014 Affirmative Defenses included that Plaintiff's claims are barred by the applicable statute of limitations. (Docket Entry No. 4 at Pg ID 35). Thus, Plaintiff has been on notice since March 7, 2014, that Defendants assert that his claims are barred by the applicable statute of limitations.

This Court extended the dates in the initial Scheduling Order at the joint request of the parties. (*See* Docket Entry Nos. 17 & 19).

In October of 2015, Plaintiff sought to file an amended complaint in order to replace Count II of his Complaint (the ERISA Count) so that it would assert a claim under the Michigan Public Employee Retirement System Investment Act ("MPERISA"):

> In preparation for jury trial in this action, Mr. Davis discovered that ERISA applies only to private entities and their respective retirement systems (and is inapplicable to public sector retirement systems). 29 U.S.C. §1003(a) and (b)(1). Fortunately, however, Mr. Davis has identified that the Michigan Public Employee Retirement System Investment Act ("MPERISA"). MCL 38.1132, et seq – which is derived from ERISA – applies to public sector retirement systems as well. . . Accordingly, Mr. Davis respectfully requests leave to amend his Complaint, to allow his claim against defendants under MPERISA to supercede Count II of the original Complaint, which alleged ERISA violation.

(Docket Entry No. 52 at 2). This Court denied that motion because Plaintiff was seeking to assert new claims on the eve of trial (approximately two weeks before the scheduled final pretrial conference) and more than a year and a half after discovery had closed. (Docket Entry No. 53).

In an Order issued on January 7, 2016, this Court granted Defendants' motion seeking leave to file a Motion for Summary Judgment. (Docket Entry No. 68). This Court reviewed the history of this action and explained why it would allow the requested late motion to be filed under the circumstances presented:

2

The deadline for filing dispositive motions passed without any party having filed a dispositive motion.  On October 9, 2015, the Court notified the parties that the Final Pretrial Conference would be held on October 27, 2015.  Plaintiff did not provide the Court with a proposed Final Pretrial Order before, or even at, the October 27, 2015 conference.

During the conference, the parties indicated that no proposed Final Pretrial Order had been submitted to the Court because the parties had not been able to agree on a proposed order. In addition, Defense Counsel advised that Court that due to serious health issues with his parents he has been unable to meet his obligations in this case and neglected to file a dispositive motion within the time permitted for doing so.  Defense Counsel asked the Court to allow the law firm of Clark Hill to enter an appearance in this action and proceed with the case on behalf of Defendants.  He also asked that the Court consider granting Defendants leave to file a dispositive motion.

Thereafter, this Court issued an order providing that if Defendants wish to have substitute counsel enter an appearance, that is to be done by November 3, 2015. (Docket Entry No. 54).  The Court further advised it would hold a Status Conference/Joint Final Pretrial Conference in this matter on November 17, 2015.

Neither Defendants nor Counsel at the Clark Hill law firm, however, were provided with this Court's October 27, 2015 Order until after November 3, 2015.  But Counsel from the Clark Hill law firm entered appearances on November 17, 2015 and appeared at the November 17, 2015 conference.

Thereafter, on November 25, 2015, Defendants' newly-retained counsel filed a Motion for Leave to File Dispositive Motion.  (Docket Entry No. 63).  The motion has been fully briefed.  . . . .

In their motion, Defendants assert that they are blameless for their prior counsel's neglect in failing to file a timely dispositive motion.  They note that "[c]ourts in this Circuit and across the nation consistently acknowledge that a party should not be held responsible for the neglect of its attorney in following orders of the court or the court rules."  (Defs.' Br. at 4) (Citing *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951 (6th Cir. 1987)).  Defendants further assert that Plaintiff will not prejudiced by the filing of the motion because he has been on notice of Defendants' statute-of-limitations defense since the outset of this case.  They also assert that should the Court deny their motion, "the matter will be ready for trial promptly after the Court issues its decision." (*Id*. at 5-6).

The Court appreciates Plaintiff's frustration with the lack of diligence by Defendants' former counsel.  Nevertheless, the Court concludes that, under the rather unique circumstances presented here, the interests of justice weigh in favor of allowing Defendants to file a dispositive motion addressing their statute-of-limitations defense.

The lack of diligence in this matter, while unfortunate, was not due to the conduct of Defendants.  Rather, it was due to the neglect of their *former counsel*, who failed to file a dispositive motion in this action and failed to apprise his

3

> clients of the status of this case. Moreover, Plaintiff has been on notice of Defendants' statute-of-limitations defense since March of 2014, and Defendants have not forfeited that defense by not filing a dispositive motion. That is, Defendants would still be able to assert that affirmative defense at trial. Thus, Plaintiff will not suffer any prejudice by virtue of the Court allowing Defendants to file their motion now. The Court concludes that allowing the parties to brief this discrete and potentially dispositive issue before trial best serves the interests of judicial economy.
>
> Moreover, should the Court deny Defendants' motion, the Court's written decision on the motion will likely assist the parties in preparing a concise, and mutually agreeable, Joint Final Pretrial Order.

(Docket Entry No. 68 at 2-4). This Court ordered Defendants to file the motion no later than January 22, 2016, and ordered Plaintiff to file his response to the motion by February 26, 2016. At Plaintiff's request, the Court later allowed Plaintiff until March 11, 2016, to file his response brief.[1]

Defendants filed their Motion for Summary Judgment on January 22, 2016. (Docket Entry No. 69). This Court's practice guidelines, which are expressly included in the Scheduling Order issued in this case, provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each

---

[1]In that January 7, 2016 Order, this Court also noted: "Defendants' current counsel asserts that Plaintiff's Complaint improperly names the "Police and Fire Retirement System of the City of Detroit" as the "Detroit Police and Fire Pensions System." (Defs.' Br. at 1). The Court directs the parties to meet and confer as to this issue, to see if they can agree on a stipulation and order to correct this apparent error." (Docket Entry No. 68, at 1 n.1). Although no stipulation and order changing the caption has been submitted, at the April 28, 2016 hearing both parties agreed that the proper Defendant is the Police and Fire Retirement System of the City of Detroit.

>of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
>c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(*See* Scheduling Order at 2-3).

Both parties[2] complied with the practice guidelines.  Thus, as to Defendant's Motion for Summary Judgment, Defendants submitted a Statement of Material Facts Not In Dispute (Docket Entry No. 70), which shall be referred to as "Def.'s Stmt.", and Plaintiff filed a Counter-Statement of Disputed Facts (Docket Entry No. 73), which shall be referred to as "Pl.'s Stmt."

The following material facts are gleaned from the evidence submitted by the parties, viewed in the light most favorable to Plaintiff, the non-moving party.

Davis has been employed by the City of Detroit Fire Department from February 7, 1983 to the present.  (Def.'s Stmt. at ¶ 1; Pl.'s Stmt. at ¶ 1; Compl. at ¶ 19).

On September 23, 1993, Plaintiff was employed as a firefighter driver.  (Def.'s Stmt. at ¶ 2; Pl.'s Stmt. at ¶ 2).  On September 23, 1993, while at the fire house, Plaintiff suffered a heart attack.  (Def.'s Stmt. at ¶ 3; Pl.'s Stmt. at ¶ 3).

For the period of September 23, 1993 to September 23, 1994, Plaintiff was placed on service-connected injury leave by the City of Detroit Fire Department's medical division.  (Def.'s Stmt. at ¶ 4; Pl.'s Stmt. at ¶ 4).

---

[2]Despite his *pro se* status, Plaintiff fully complied with the Court's practice guidelines – something a good number of lawyers fail to do.  He also submitted a courtesy copy of his Brief, with exhibits tabbed and indexed.

On or about August 31, 1994, Plaintiff applied for service-connected disability retirement benefits. (Def.'s Stmt. at ¶ 5; Pl.'s Stmt. at ¶ 5). On November 10, 1994, Plaintiff's request for service connected disability retirement was denied.[3] (Compl. at ¶ 35; Pl.'s Dep. Tr. at 31).

On November 24, 1994, Plaintiff appealed the denial of his application for service-connected disability retirement benefits by filing a petition for review with the Defendant Pension System. (Def.'s Stmt. at ¶ 7; Pl.'s Stmt. at ¶ 7).

In connection with his petition to the Medical Board of Review, three physicians reviewed the nature of Plaintiff's injury, his health condition, and his ability to return to work. The three physicians consisted of: 1) Plaintiff's personal physician; 2) a physician employed by the Defendant Pension System; and 3) an independent physician. (Def.'s Stmt. at ¶ 8; Pl.'s Stmt. at ¶ 8).

Plaintiff's personal physician and the physician employed by the Defendant Pension System determined that Plaintiff was disabled and could not return to work. The independent physician determined that Plaintiff had no disability and could return to work. (Def.'s Stmt. at ¶ 9; Pl.'s Stmt. at ¶ 9).

The physician employed by the Defendant Pension System further determined that Plaintiff's disability was not service-connected. Plaintiff's personal physician found that the

---

[3]Although Plaintiff's own Complaint alleges that the denial occurred on November 10, 1994, in opposing summary judgment, Plaintiff now states that "no evidence exists of the alleged November 10, 1994 denial. (Pl.'s Stmt. at ¶ 6). And he submitted an affidavit that states "[a]lthough I alleged in my Complaint, ¶35, that my duty disability application was denied on November 10, 1994, discovery revealed no such denial on or about that date." To the extent that Plaintiff is trying to establish that he was not notified of the November 10, 1994 denial, that effort fails. Plaintiff admits that he appealed the denial on November 24, 1994. (Pl.'s Stmt. at ¶ 7). Plaintiff could not have appealed an adverse ruling if he was not aware of it.

cause of Plaintiff's disability, e.g., whether it was service-connected or nonservice-connected, could not be determined. (Def.'s Stmt. at ¶ 10; Pl.'s Stmt. at ¶ 10).

Based, among other things, on the findings of the Medical Board of Review, the Defendant Pension System upheld its denial of Plaintiff's application for service-connected disability retirement benefits on April 25, 1996. Plaintiff was informed of this decision of the Defendant Pension System by way of a letter dated May 8, 1996. (Def.'s Stmt. at ¶ 11; Pl.'s Stmt. at ¶ 11; *see also* Ex. G to Pl.'s Resp. Br., letter advising Plaintiff that "[t]he Board of Trustees, on April 25, 1996, having read and considered the Medical Board of Review reports relative to your application for Duty Disability Retirement, upheld its November 10, 1994 denial of your application for Duty Disability Retirement.").

Plaintiff applied to and was approved by the Defendant Pension System for nonservice-connected disability retirement benefits on August 7, 1996. (Def.'s Stmt. at ¶ 12; Pl.'s Stmt. at ¶ 12).

Plaintiff received nonservice-connected disability retirement benefits until March 13, 2008, at which time Plaintiff returned to active-duty employment as a firefighter with the City of Detroit Fire Department. (Def.'s Stmt. at ¶ 13-14; Pl.'s Stmt. at ¶ 13-14).

Plaintiff's union advised Plaintiff in a letter dated January 5, 1995, that the union believed that Plaintiff was eligible for service-connected disability retirement benefits. Plaintiff's union further informed him in 1996 that Plaintiff should file a civil action against the Defendant Pension System in connection with its denial of Plaintiff's application for service-connected disability retirement benefits. (Def.'s Stmt. at ¶ 15; Pl.'s Stmt. at ¶ 15).

Acting *pro se*, Plaintiff filed this civil action against Defendants on January 30, 2014.

(Docket Entry No. 1).

Plaintiff's Complaint asserts a claim under 28 U.S.C. § 1983 ("Plaintiff's First Cause of Action"). Plaintiff claims that Defendants violated his equal protection and due process rights when they denied his claim for a service-connected disability. (Compl. at ¶¶ 9-17 & 74; *see also* Pl.'s Dep. Tr. at 13-14, wherein Plaintiff testified that his § 1983 claim is based upon his allegation that Defendants violated his civil rights in that due process wasn't followed in the process of reviewing of the determination as to whether Plaintiff had a service-connected disability).

Plaintiff's Complaint also asserts an ERISA breach of fiduciary duty claim under 29 U.S.C. § 1104 and § 1109. (Compl. at ¶¶ 76-80) ("Plaintiff's Second Cause of Action").

Plaintiff testified that he did not initiate a civil action against the Defendant Pension System during the period of time from 1996 to January 30, 2014, because Plaintiff could not afford an attorney to take on his case. (Def.'s Stmt. at ¶ 16; Pl.'s Stmt. at ¶ 16).

In their March 7, 2014 Answer and Affirmative Defenses (Docket Entry No. 4), Defendants asserted that Plaintiff's claims are barred by the applicable statutes of limitations. (Def.'s Stmt. at ¶ 18; Pl.'s Stmt. at ¶ 18).

## ANALYSIS

Defendants' Motion for Summary Judgment presents the discrete issue of whether Plaintiff's claims are barred by the applicable statutes of limitation.

**I.     Is Plaintiff's § 1983 Claim Time-Barred?**

Plaintiff's Complaint alleges that, in violation of 28 U.S.C. § 1983, Defendants violated his equal protection and due process rights when they denied his claim for a service-connected

8

disability. (Compl. at ¶¶ 9-17 & 74; Pl.'s Dep. Tr. at 13-14).

Defendants assert that Plaintiff's § 1983 claim is time-barred. Citing *Wolfe v. Perry*, 412 F.3d 707 (6th Cir. 2005) and other authority, Defendants argue that a three-year statute of limitations applies to Plaintiff's § 1983 claim.

Defendants assert that it is undisputed that a final decision on Plaintiff's application for a service-connected disability was made on April 25, 1996, and was communicated to Plaintiff on or about May 7, 1996. Defendants also note that Plaintiff testified that in 1996 that his union informed him that could file a civil action against Defendants in connection with the denial of his application for service-connected disability benefits. Nevertheless, Plaintiff waited almost two decades before filing this action.

Defendants also assert, in a footnote, that the continuing violations doctrine would not aid Plaintiff even if it were to apply here:

> To the extent Plaintiff may assert in his response to this Motion that there was a continuing violation of due process and equal protection, in that he continued to receive non-service-connected disability retirement benefits through March 13, 2008, Plaintiff's claim is still time-barred, as the period of limitations for any such continuing violation would have expired on March 13, 2011 – nearly three years before this action was initiated.

(Defs.' Br. at 7 n.4).

In response, Plaintiff does not dispute that a three-year period of limitations applies to his § 1983 claim. And notably, in the section of his brief that responds to the timeliness challenge to his § 1983 claim, Plaintiff does not discuss his claim that Defendants violated his civil rights by denying his application for a service-connected disability.

Rather, Plaintiff attempts to raise § 1983 claims not asserted in his Complaint – that

9

Defendants have violated his civil rights by giving him conflicting statements and estimates of future pensions benefits.  Plaintiff then asserts that the continuing violations doctrine should render that § 1983 claim timely because Defendants have continued to give him conflicting pension estimates over time.

The Court concludes that the § 1983 claim that Plaintiff raised in this action is clearly time-barred.

As the Sixth Circuit explained in *Wolfe v. Perry*, a three-year limitations period applies to a § 1983 claim that arises in Michigan:

> Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Id.* (citing *Wilson v. Garcia*, 471 U.S. 261, 275–76, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). We have held that the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims. Mich. Comp. Laws Ann. § 600.5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir.), *cert. denied*, 543 U.S. 988, 125 S.Ct. 500, 160 L.Ed.2d 372 (2004); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.), *cert. denied*, 479 U.S. 923, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986).

*Wolfe v. Perry*, 412 F.3d at 713-14.  Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run.  *Wolfe v. Perry*, 412 F.3d at 714.

The Sixth Circuit has held that the statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.  *Roberson v. Tennessee,* 399 F.3d 792, 794 (6th Cir. 2005) (citations omitted).  Moreover, the Sixth Circuit has instructed that courts take a "common-sense approach

to this task," inquiring "as to what event should have alerted the typical lay person to protect his or her rights." *Id.*

Here, Plaintiff's Complaint alleges that, in violation of 28 U.S.C. § 1983, Defendants violated his equal protection and due process rights when they denied his claim for a service-connected disability. It is undisputed that Defendants made a final decision denying Plaintiff's application for a service-connected disability on April 25, 1996, and that Plaintiff was informed of that decision on May 8, 1996. (*See* Ex. G to Pl.'s Br.; Pl.'s Stmt. at ¶ 11).

It is also undisputed that Plaintiff was advised in 1996 that he could file suit over the determination at issue. Plaintiff testified that representatives of his union advised him "repeatedly," back in 1996 and "over the years," that Plaintiff could file a civil action over the decision at issue. (Pl.'s Dep. Tr. at 38-41). Plaintiff testified that he did not file this action sooner because he was unable to afford an attorney. (*Id.* at 41-42).

Thus, the three-year period would end in 1999. And even if the continuing violations doctrine were to apply to the § 1983 claim asserted by Plaintiff in his Complaint, by virtue of his having received lower payments during the time he was on non-service connected disability, that would only extend the time period to three years after March 13, 2008 (the date Plaintiff returned to work). Thus, even if the continuing violations doctrine were to apply, that would only extend the time for filing this action until March 13, 2011. But Plaintiff did not file this action until several years later – on January 30, 2014.

The Court shall dismiss Plaintiff's § 1983 claim as time-barred.

**II.     Is Plaintiff's ERISA Claim Time-Barred?**

In the pending motion, Defendants again[4] assert that the Defendant Pension System "is not a pension plan subject to ERISA, since it is a qualified governmental plan under the United States Internal Revenue Code." (Defs.' Br. at 1 n.2).[5]

But Defendants assert that, even if the Defendant Pension System was subject to ERISA, Plaintiff's ERISA breach of fiduciary duty claim would be time-barred. Defendants note that claims "for breach of fiduciary duties enumerated by Congress at 29 U.S.C. § 1104 and related liability provisions at 29 U.S.C. § 1109 are subject to the periods of limitations set forth at 29 U.S.C. § 1113." (Defs.' Br. at 8) (citing *Zirnhelt v. Michigan Consol. Gas Co.*, 526 F.3d 282, 288 (6th Cir. 2008)). Defendants assert that in this case, "Plaintiff alleges that Defendants failed to discharge their fiduciary duties in accordance with 29 U.S.C. § 1104, in that Defendants failed to approve his application for service-connected disability retirement benefits in 1994 and, following the review of Plaintiff's medical condition by PFRS's Medical Board of Review, made a final determination upholding PFRS's initial denial of Plaintiff's application on April 25, 1996." (Defs.' Br. at 9) (Citing Compl. at ¶¶ 76-77). Defendants contend that "[t]here is no dispute that the events on which Plaintiff bases his ERISA claim occurred nearly twenty years before he initiated this action. There further is no dispute that Plaintiff was contemporaneously aware of the underlying conduct on which he bases his ERISA claim, e.g., the denial of his application for service-connected disability retirement benefits, and, further, was informed by his union of his right to bring a civil action in 1996.") (*Id.*). Defendants therefore contend that "at

---

[4]*See* Defs.' 3/7/14 Answer & Affirmative Defenses (Docket Entry No. 4).

[5]And Plaintiff has previously acknowledged the same. (*See* Docket Entry No. 52 at 2).

12

the latest, the period of limitations for Plaintiff's ERISA claim expired on April 25, 1999 – nearly 15 years before Plaintiff initiated the present action. Plaintiff's ERISA claim, therefore, is time-barred and must be dismissed, as a matter of law." (*Id*.).

In response to this challenge, Plaintiff concedes that the statute of limitations on his ERISA claim is six years, but then appears to argue that the shorter three-year period should apply. (*See* Pl.'s Br. at 10). He then makes arguments about when he had actual knowledge as to a change in his job classification status and suggests that Defendants engaged in some kind of misconduct related to making that change in classification. But his Complaint did not base either of his claims on such allegations.

The Court concludes that any ERISA breach of fiduciary duty claim asserted by Plaintiff in this action would be time-barred as a matter of law.

"Under ERISA, the victim of an alleged fiduciary breach 'normally has six years' to bring [his or ]her claim, though 'this period may be shortened to three years when the victim had actual knowledge of the breach or violation.'" *Zirnhelt*, 526 F.3d at 288 (quoting *Wright v. Heyne*, 349 F.3d 321, 327 (6th Cir. 2003) and citing 29 U.S.C. § 1113). "In determining when the limitations clock starts under the actual-knowledge prong, we look to the 'plaintiff's actual knowledge of the underlying conduct giving rise to the alleged violation that is required, rather than the knowledge that the underlying conduct violates ERISA.'" *Zirnhelt, supra*.

According to Plaintiff's Complaint, Defendants breached their fiduciary duties by placing Plaintiff on nonservice-connected disability retirement status, as opposed to service-connected disability status. It is undisputed that: 1) Plaintiff's request for service-connected disability retirement was initially denied on November 10, 1994; and 2) the Defendant Pension System

upheld its denial of Plaintiff's application for service-connected disability retirement benefits on April 25, 1996. It is also undisputed that Plaintiff had actual knowledge of those actions at that time. As such, the period of limitations as to Plaintiff's ERISA claim would have expired three years after April 25, 1996 (ie., April 25, 1999).

Moreover, even if the longer six-year period were to apply, Plaintiff's claim would still be time-barred. That is because the date of the last action which constituted a part of the breach occurred on April 25, 1996. Thus, the six-year period would have expired on April 25, 2002. But Plaintiff did not file this action until 2014.

The Court rules that, to extent that Plaintiff states an ERISA[6] claim for breach of fiduciary duties against Defendants, such claim is time-barred.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED and this action is DISMISSED.

Dated: May 3, 2016
S/ Sean F. Cox
Sean F. Cox
U. S. District Judge

I hereby certify that on May 3, 2016, the foregoing document was served on counsel of record via electronic means and upon Gregory Davis via First Class mail at the address below:

Gregory Davis
6149 Farmbrook
Detroit, MI 48224

S/ J. McCoy
Case Manager

---

[6]In addition, the Court notes that even if Plaintiff had pursued some kind of private cause of action under the Michigan Public Employee Retirement System Investment Act in this litigation, any such action would also be time-barred.